UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
NEWTEK MEDIA CAPITAL d/b/a            :
DC MEDIA, LLC,                        :   Civil Action No.: 08 Civ. 5746 (DAB)(DFE)
                                      :
         Plaintiff,                   :
                                      :   **AFFIDAVIT OF ANDY ARVIDSON**
   v.                                 :
                                      :
IMAGINE FULFILLMENT SERVICES,         :
LLC,                                  :
                                      :
         Defendant.                   :
------------------------------------------------------x

STATE OF CALIFORNIA          )
                             ) ss.:
COUNTY OF LOS ANGELES        )

**ANDY ARVIDSON**, being duly sworn, deposes and states, upon his oath:

1. I am the co-founder and co-owner of Imagine Fulfillment Services, LLC ("IFS"), the Defendant in the above-captioned matter, and live in the State of California. I have personal knowledge of the facts set forth herein and respectfully submit this Affidavit in support of Defendant's motion to dismiss the complaint or, in the alternative, to transfer venue.

2. IFS, which was founded in the late-90's, is an order fulfillment company that provides order fulfillment services for the direct response industry. IFS provides, among other services, warehousing, assembly, data entry and inventory services for its clients.

3. IFS is a limited liability company incorporated under the laws of the State of California. IFS is not authorized to conduct business in the State of New York and has never applied for such authority.

4.      IFS' headquarters is located at 20100 South Vermont Avenue in Torrance, California which is in Los Angeles County.

5.      IFS, which employs approximately 300 full-time employees and has approximately 300,000 square feet of building space in California, has never had a single employee or any office space, including a warehouse or other real property, in New York.

6.      Furthermore, IFS has never: (a) maintained a bank account in New York; (b) maintained a telephone listing in New York; (c) directly advertised its services in New York; (d) sent an employee to New York in connection with any IFS-related business activity; and (e) contracted anywhere to supply goods or services in New York, with the exception of shipping goods to New York pursuant to orders sent from New York from IFS' client's customers.

7.      On or about April 1, 2006, IFS entered into a contract with ShopFlash, Inc. ("ShopFlash"), a direct marketing and distribution company of personal and home care products, whereby IFS agreed to provide order fulfillment services to ShopFlash with respect to a product known as the "Power Storm Vacuum."  Specifically, IFS agreed, among other things, to fulfill orders, process returns, store the product, provide customer service via call centers, receive and track inventory and make local deliveries.

8.      The contract did not require IFS to supply goods or services in New York.  In fact, all of the services IFS agreed to provide were provided by IFS in California, as anticipated under the terms of the contract.

9.      I negotiated the terms of the contract on behalf of IFS.  All negotiations with ShopFlash regarding the contract took place over the telephone and through e-mail.  I did not travel to New York to negotiate the contract.  In fact, I have only been to New York

approximately four times in my forty-two year lifetime and each time was for non-business related reasons.

10. The terms of the oral contract were memorialized in a writing prepared by IFS in California. The contract was never executed. A true and accurate copy of the IFS-ShopFlash contract is attached hereto as **Exhibit A**. The writing indicates that the contract is governed by California law.

11. In or around June 2006, Newtek Media Capital d/b/a DC, Media LLC ("Newtek"), the Plaintiff in the above-captioned matter, purported to take over the "Power Storm Vacuum" project from ShopFlash and sought to continue the relationship with IFS. Although IFS continued to provide order fulfillment services regarding the "Power Storm Vacuum" project and Newtek forwarded monies for said services to IFS in California, at no point in time did IFS and Newtek enter into a contract regarding the "Power Storm Vacuum" project. Moreover, at no time did Newtek ever indicate that ShopFlash had assigned its rights under any agreement with IFS to Newtek.

12. Ryan Dall ("Dall") is the day-to-day Director of Newtek. In dealing with Newtek regarding the "Power Storm Vacuum" project, I regularly communicated with, among others, Dall by e-mail and over the phone. Dall lives in California and has a cellular phone number and an office phone number with an "805" area code. An "805" area code is a California area code.

13. Any relationship IFS had with Newtek terminated in January 2007.

14. On or about July 16, 2008, I was personally served, on behalf of IFS, with the Summons and Complaint in the above-captioned matter in California.

_____
ANDY ARVIDSON

Sworn to before me this
26 day of July, 2008

_____
Notary Public

SID POUDYAL
Commission # 1767133
Notary Public - California
Los Angeles County
My Comm. Expires Sep 11, 2011

March 28, 2006                                                                                        **ShopFlash Inc.**



# FULFILLMENT SERVICE CONTRACT

This Fulfillment Services Contract (this **"Contract"**) is made and entered into as of **April 1, 2006** by and between **ShopFlash Inc.** with its principal place of business in **521 5th Avenue, 20th Floor New York, NY 10175** (**"Buyer" or "Client"**) and **IMAGINE FULFILLMENT SERVICES**, a **California Limited Liability Company,** with its principal place of business at 20100 S. Vermont Ave., Torrance, CA 90502 (**"Vendor" or "Imagine" or "IFS"**).

1.  SCOPE:  This Contract is intended to establish contractual terms and conditions for Buyer's purchase of Fulfillment Services (collectively, **"Services"**) which are identified below:

2.  TERM AND TERMINATION:

    (a)   One Year Term:  The period of time during which Buyer may submit orders (an **"Order"**) for fulfillment services related to Buyer's product, as more fully described below, under this Contract and during which Vendor shall fulfill such orders (the **"Term"**) shall commence on April 1, 2006. This contract is automatically extended past **One Year from Start Date** and will remain in place until a new contract is signed or until either party terminates this agreement.  This contract may be terminated with 30 days written notice by either party.

3.  VENDOR PERSONNEL:

    Services shall be provided by individuals of a level of skill and experience.

4.  CORPORATE WARRANTIES: Vendor represents, warrants and agrees as follows:

    (a)   Vendor is a limited liability corporation (LLC) duly formed under the laws of the State of California with all necessary power and authority to own its properties and assets and to carry on its business as now conducted.

    (b)   This Contract constitutes the legal, valid and binding obligation of Vendor, enforceable against Vendor in accordance with its terms except as may be limited by any applicable bankruptcy, insolvency, reorganization or similar laws affecting creditors' rights generally and except as enforcement may be limited by general principles of equity.  The execution, delivery and performance of this Contract have been duly and validly authorized by all necessary limited liability company actions on the part of Vendor, and this Contract has been duly executed and delivered by Vendor.

5.  SERVICE WARRANTIES: Vendor represents warrants and agrees to Buyer, its customers and licensees, as follows:

310-217-4610
Fax (310) 217-4615          Page 1 of 8

                                                                        _____      _____
                                                                        Vendor       Buyer

March 28, 2006                                                                                              **ShopFlash Inc.**

      (a)    <u>Quality Control</u>:  All Services provided hereunder shall be of first class quality
      (b)    <u>Timeliness</u>:  Vendor shall perform Services timely, in accordance with any cost estimates and time schedules agreed upon with Buyer. Vendor specifically agrees and understands that time is of the essence with respect to meeting such time schedules.

6.      **ADEQUATE FACILITIES/INVENTORY:**  Throughout the Term, Vendor shall provide adequate facilities to perform all of the fulfillment services required by Buyer, including proper storage of Buyer inventory and materials. Buyer materials stored pursuant to this Contract shall be kept separate from all other materials, including from all competitors, in a secure and isolated area. Vendor shall update inventory daily. Vendor shall be responsible for all risk of direct physical loss of inventory and materials (i.e., at the manufacturer's wholesale price, not at the retail price) while they are in Vendor's possession or control at any time during the Term of this Contract. Vendor acknowledges that Buyer shall retain all right and title to all inventory and packaging materials that Buyer causes to be delivered to Vendor under this Contract. Buyer reserves the right to physically inspect or remove any and all such inventory and materials from Vendor's possession and control. Vendor to perform quarterly inventory counts and provide results to Buyer at $35 per labor hour. Vendor will provide daily cycle counts.

7.      <u>INSURANCE</u>:  During the Term of this Contract, Vendor will maintain, with a financially sound insurance company having an A.M. Best rating of A or better, the following insurance coverage: (a) commercial general liability insurance, with a combined single limit of not less than One Hundred Thousand Dollars ($100,000) and Two Hundred and Fifty Thousand Dollars ($250,000) in the aggregate, for bodily injury (including death) and property damage; (b) worker's compensation, occupation disease and employer's liability, with limits of not less than One Hundred Thousand Dollars ($100,000) per accident for bodily injury and One Hundred Thousand Dollars ($100,000) per employee for bodily injury by disease, and disability benefit and similar employee benefit insurance at not less than the minimum coverage levels required under the laws of the state of California. Concurrently with its execution of this Contract, Vendor will deliver to Buyer a Certificate of Insurance naming Buyer, Buyer's parent, subsidiary and affiliated entities, successors, assigns and licensees, and their respective officers, agents, directors, owners, shareholders and employees, as Additional Insured upon signature of this agreement.

8.      <u>CONFIDENTIAL INFORMATION</u>:
"Buyer Confidential Information" means proprietary written or oral information, whether or not labeled or otherwise designated as "confidential", "proprietary" or "company private", relating to the business (present or contemplated) and/or customers of Buyer that Vendor obtains from Buyer or receives in connection with this Contract. By example, Buyer Confidential Information shall include the terms (including pricing terms) and/or conditions of this Contract; the nature of any Services provided, or products created hereunder; Buyer's business procedures, designs, employees, selling techniques, distribution methods, product quality, delivery terms, credit performance; and Buyer's customer and Vendor lists (including customer and Vendor employees) and inventory lists. Vendor agrees that it shall keep confidential all Buyer Confidential Information. Vendor shall not, without the prior written consent of Buyer, disclose Buyer Confidential Information in any manner whatsoever, in whole or in part, or use Buyer Confidential Information, directly or indirectly, for any purpose other than in connection with this Contract and not in any way inherently detrimental to Buyer. Moreover, Vendor agrees to reveal Buyer Confidential Information to its agents only if and

310-217-4610
Fax (310) 217-4615      Page 2 of 8

                                                                                                                                 Vendor      Buyer

March 28, 2006                                                                                                    **ShopFlash Inc.**

to the extent that such agents have a strict need to know such Buyer Confidential Information and agree to be bound by the terms and conditions of this Contract. The provisions of this Section shall survive the termination of this Contract.

9.  INDEMNIFICATION; LIMITATIONS ON LIABILITY.
Each Party shall indemnify, hold harmless and defend the other party, and each person or entity that is a shareholder, officer, director, partner, employee, affiliate or agent of that other party, from and against any and all losses, claims, damages, liabilities, whether joint or several, expenses (including reasonable outside legal fees and expenses), judgments, fines and other amounts paid in settlement, incurred or suffered by any such person or entity arising out of or in connection with (i) the inaccuracy of any representation or warranty made by such party hereunder; (ii) any breach of this Contract by such party; or (iii) any negligent, reckless or intentionally wrongful act or omission by such party or its employees or agents in connection with the performance by such party or its employees or agents of the services required by such party hereunder, provided that such negligent, reckless or intentionally wrongful act or omission was not done or omitted at the direction of the other party. IFS will suspend all fulfillment services if client bills are not made within payment terms. IFS not responsible for lost revenue, traffic or data if client bills are not paid with payment terms. IFS' liability for loss or damage will exist only for loss or damage which occurred during the time of possession by IFS and will cease at the time of delivery to carrier. In no event will IFS be liable for special, incidental or consequential damages such as lost profits or business.

11.  **PAYMENT TERMS:**
     **(a)    Net seven days (7) days from the date of invoice Invoices will be submitted weekly**

12.  MISCELLANEOUS TERMS

This Contract constitutes the entire agreement between the parties relating to the subject matter hereof and supersedes all prior contracts, agreements, promises, and representations. This Contract may be changed, modified or amended only if agreed to in writing. All waivers hereunder must be made in writing, and failure at any time to require another party's performance of any obligation under this Contract shall not affect the right subsequently to require performance of that obligation. Any waiver of any breach of this Contract shall not be construed as a waiver of any continuing or succeeding breach. This Contract will be governed by the law of the State of California, as such law is applied to contracts entered into and performed entirely therein. If IFS is found the prevailing party of any action commenced to enforce or interpret this Contract or any right arising in connection with this Contract, IFS shall be entitled to recover from the other party all reasonable attorneys' fees, costs and expenses incurred by such prevailing party in connection with such action or proceeding. If any provision of this Contract is invalid under any applicable statute or rule of law, it is to that extent to be deemed omitted and the remaining provisions of this Contract shall in no way be altered or impaired thereby. The relationship of the parties is that of independent contractors, and no one party is the agent of the other and neither party is authorized to act on behalf of the other party. IFS will suspend all fulfillment services if client bills are not made within payment terms. IFS will provide 24 hour notice before suspending services. IFS not responsible for lost revenue, traffic or data if client bills are not paid with payment terms. IFS will need at least 1 weeks notice in order to make changes to the database. Requests for changes. IFS will have the right to change payment terms if there is a substantial adverse change in IGIA's credit standing. In such an event, the obligation to perform future work will be subject to reaching mutual agreement on revised terms. As

310-217-4610
Fax (310) 217-4615          Page 3 of 8

                                                                                    _____   _____
                                                                                     Vendor     Buyer

March 28, 2006                                                                                          ShopFlash Inc.

security for payment, IFS will have the right to retain possession of, and will have a lien on, all property owned by Client and in the possession of IFS. If Client files for protection under any bankruptcy or insolvency statute, Client agrees to take all actions necessary to have IFS treated as a critical vendor. If an invoice is past due, IFS may, at its discretion, charge interest to Client at the rate of 10% weekly on all amounts past due as well as all costs of collection including but not limited to reasonable attorney's fees.
CHARGES-BASED ON 10,000 ORDERS MONTHLY
Fulfillment order fee is: $1.05 ea order up to 5 items and $0.25 each additional item (based on 20,000 orders monthly)
Returns processing fee....$0.75per item; Refurbishing fee TBD
Packing Slip: $0.20ea
Postage Due Returns from USPS--billed weekly (Post Office charges)
Monthly Storage 200 pallets free monthly; $12.00 ea pallet (48"x48"x48") thereafter
Materials: Shipper box price TBD based on Sample
Credit Card Processing: $0.65 ea approved order
Customer Service: $0.80 per minute up to $4.00; 800 number to be provided by IFS in/outbound call; email $2.50 ea; Ea. Line $35.00 with a 2 line minimum.
Receiving and Physical Counts: $35/hour
Container Loading/Unloading : 20'-$350; 40'$450
Local Deliveries: $75.00 for van; $350 for 26' bobtail
Initial Inventory pick up from PCA FREE.
Postage monies due one week in advance by wiring funds to IFS (system TBD) if using IFS transportation accounts; ShopFlash may use their own transportation account.
Email confirmation for trackable orders (rush shipment): $0.25ea
IT Set-Up (Option 2): **Waived**; After standard set up, any customized reporting is $150.00 per hour with a 1hr minimum
Monthly data hosting....$350
Monthly fulfillment minimum-$3000.00 due at the beginning of each month to be reconciled at the end

Fulfillment payment terms:  **net 7 days** (invoices e-mailed or messengered weekly)
These prices are for the Continental US only; Puerto Rico, Guam, HI, AK, HI and International orders are additional.

Check Refunds (if applicable): $10.00 ea plus $0.39 postage plus the refund amount.
Chargeback fee $7.50 ea plus shipping the cost of each letter.
Initial deposit of $3500.00 to be held for the length of doing business with IFS due in advance.

| OPTION 2: | |
|---|---|
| Orderwave.com Setup Fee -Waived<br>Monthly Hosting Fee -- $350<br>Setup fees due in advance prior to work starting |  |
| **Includes:** | |
| ✓ Creation of account for Orderwave.com use<br>✓ Creation of tables<br>✓ Creation of users and security<br>✓ Access to various modules (inventory, orders, reporting, etc).<br>✓ Integration of data into Orderwave.com from store/call center/web processing company (includes up to 2 different data integration sets)<br>✓ Mapping of data into system | |

310-217-4610
Fax (310) 217-4615        Page 4 of 8

                                                                              _____    _____
                                                                                Vendor        Buyer

March 28, 2006                                                                 **ShopFlash Inc.**

> - ✓ Linking of system to packing slip generation
> - ✓ Linking of system to pre-authorized merchant gateways (additional gateway programming available for additional fee)
> - ✓ FTP access for data delivery
> - ✓ Maintenance of system (backup, file maintenance, indexing, etc).

Transportation Costs:

**USPS Parcel Select**

| Weight | Rate |
|---|---|
| 1 | $4.30 |
| 2 | $4.72 |
| 3 | $5.27 |
| 4 | $5.69 |
| 5 | $6.09 |
| 6 | $6.45 |
| 7 | $6.70 |
| 8 | $6.95 |
| 9 | $7.20 |
| 10 | $7.50 |
| 11 | $7.88 |
| 12 | $8.18 |
| 13 | $8.44 |
| 14 | $8.69 |
| 15 | $8.94 |
| 16 | $9.20 |
| 17 | $9.45 |
| 18 | $9.64 |
| 19 | $9.80 |
| 20 | $9.96 |

*Rates include Delivery Confirmation Service for full web-based, door-to-door parcel tracking*

Rates include Delivery Confirmation Service for full door-to-door, web-based parcel tracking
Rates are based on January 8, 2006 USPS Parcel Select rates
Parcels that exceed 84" in combined length & girth will be charged the applicable USPS "Balloon" rate
minimum of 15 pounds

310-217-4610
Fax (310) 217-4615        Page 5 of 8

_____   _____
Vendor       Buyer

March 28, 2006                                                                                  **ShopFlash Inc.**

*Fed-Ex ground rates to Continental US only*

| Weight Not to Exceed (in Lbs) | With Fuel Surcharge and Home Delivery |
|---|---|
| 1 lb. | $ 7.00 |
| 2 lbs. | $ 7.06 |
| 3 | $ 8.28 |
| 4 | $ 8.61 |
| 5 | $ 8.94 |
| 6 | $ 9.06 |
| 7 | $ 9.31 |
| 8 | $ 9.71 |
| 9 | $ 10.23 |
| 10 | $ 11.01 |
| 11 | $ 11.60 |
| 12 | $ 12.45 |
| 13 | $ 13.24 |
| 14 | $ 13.85 |
| 15 | $ 13.83 |
| 16 | $ 14.36 |
| 17 | $ 14.63 |
| 18 | $ 14.89 |
| 19 | $ 15.42 |
| 20 | $ 15.95 |
| 21 | $ 16.46 |
| 22 | $ 16.99 |
| 23 | $ 17.51 |
| 24 | $ 18.04 |
| 25 | $ 18.58 |
| 26 | $ 18.36 |
| 27 | $ 18.83 |
| 28 | $ 19.30 |
| 29 | $ 19.83 |
| 30 | $ 20.37 |
| 31 | $ 20.89 |
| 32 | $ 21.40 |

310-217-4610
Fax (310) 217-4615            Page 6 of 8

_____   _____
Vendor       Buyer

March 28, 2006                                                                                               ShopFlash Inc.

| | | |
|---|---|---|
| 33 | $ | 21.95 |
| 34 | $ | 22.48 |
| 35 | $ | 23.01 |
| 36 | $ | 23.53 |
| 37 | $ | 24.05 |
| 38 | $ | 24.58 |
| 39 | $ | 25.09 |
| 40 | $ | 25.64 |
| 41 | $ | 26.15 |
| 42 | $ | 26.68 |
| 43 | $ | 27.20 |
| 44 | $ | 27.71 |
| 45 | $ | 28.24 |
| 46 | $ | 28.69 |
| 47 | $ | 29.16 |
| 48 | $ | 29.62 |
| 49 | $ | 30.06 |
| 50 | $ | 30.50 |

*Rates include current applicable fuel surcharge*

**Fed-Ex Rates: Fees are due 1 week in advance of shipping based on estimated order volume. This includes residential and fuel surcharge.**

Fuel surcharges may change (due to the rising cost of fuel)

Initial programming and setup **Warehouse Management System WMS demo: www.Orderwave.com  user: iccdemo pass: demoaccess**
Includes creating the file transfers (FTP), Web-based real-time inventory update, database
Management, synching with telemarketing systems, synching with merchant account and development of shopping cart if applicable.
- Quote will be provided on any future IT work done
- Hosting fees for database hosting monthly if applicable
- A specified estimate for additional programming can be provided

**Call Center**
Live agents are available from 8am-5pm Pacific Time M-F except Holidays.
They are trained based on a script designed for your campaign.
All agents are trained in save the sale and up-sell techniques.
A customer service interface provides the rep an easy way to look up customer info quickly and place up-sell orders.

*Additional specifications could alter above agreement*
*Net 7 day payments from invoice date!*

310-217-4610
Fax (310) 217-4615          Page 7 of 8

                                                                                       _____        _____
                                                                                         Vendor            Buyer

March 28, 2006                                                                                               **ShopFlash Inc.**

This Contract could be altered after consultation between Buyer and Vendor. Any such changes to this Contract will become amendments to this Contract and will become binding only when executed by authorized representatives of both parties.

By signing in the spaces provided below, Vendor and Buyer accept and agree to all of the terms and conditions of this Contract.

IMAGINE FULFILLMENT SERVICES (IFS)                ShopFlash INC ("Client")
("Vendor")

By _____            By _____
            Name/Title                                                                Name/Title


_____                _____
Signature                                                                         Signature


_____                _____
Date                                                                                   Date